UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL NOEL OSORTO VELASCO (A-Number: 209-295-118),<br>Petitioner,<br>v.<br>MARCOS CHARLES, *et al.*,<br>Respondents. | Case No. 1:26-cv-7091-DC-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Angel Noel Osorto Velasco came to the United States in 2016 as an unaccompanied minor when he was eight years old. Immigration authorities released him into the United States in August 2016, and in 2025 the Department of Homeland Security granted him special immigrant juvenile status. In November 2025, immigration authorities re-detained petitioner after he was arrested by state law enforcement. Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his re-detention without a constitutionally compliant bond hearing violates due process. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Procedural and Factual Background**

Petitioner entered the United States as an unaccompanied minor in 2016 when he was eight years old. ECF No. 1 at 8. He was taken into custody by immigration authorities and then transferred to the custody of the Department of Health and Human Services, Office of Refugee

Resettlement ("ORR"), which released him into the United States on August 30, 2016. ECF No. 1-3 at 2; ECF No. 5-6 at 2.

During petitioner's years in the United States, he attended school, participated in the Air Force Junior ROTC program, received a driver's license, and obtained employment authorization. ECF No. 1-4 at 24-31, 36-37. On September 26, 2025, the Department of Homeland Security ("DHS") approved his petition for special immigrant juvenile ("SIJ") status. ECF No. 1-5 at 2; ECF No. 10-2 at 2.

On November 7, 2025, local law enforcement arrested petitioner for allegedly texting one image of child pornography when he was 17 years old. ECF No. 5-1. Petitioner is charged with "unlawful use of a two-way communications device" in violation of Florida statute § 934.215. ECF No. 1-10 at 7. On November 20, 2025, petitioner posted a bond in the amount of $5,000 with the state court and was released from criminal custody. ECF No. 1-6 at 2. However, ICE re-detained him upon his release from local jail and has kept him in custody ever since. ECF No. 5-5 at 2; ECF No. 5-7. On December 17, 2025, DHS issued petitioner a notice to appear in immigration court. ECF No. 1-7 at 2.

On February 10, 2026, petitioner filed a petition for writ of habeas corpus in the Middle District of Florida, where he was held in immigration custody. *See Osorto Velasco v. Woodall*, No. 3:26-cv-0276-JEP-LLL, ECF No. 1 ("*Osorto Velasco I*"). On February 24, the district court ordered the government to show cause why the petition should not be granted. *Id.* at ECF 6. The government responded and moved to dismiss. *Id.* at ECF Nos. 12 & 13. In its response, the government argued that "[p]etitioner is lawful detained pursuant to 8 U.S.C. § 1225(b)(2)." *Id.* at ECF No. 12 at 3. Based on that detention authority, the government argued that the immigration court lacked authority to grant bond to petitioner. *Id.*

On May 12, 2026, the district court granted the writ of habeas corpus and ordered that a bond hearing be held within two days, or that petitioner be released. ECF No. 1-8.[1] The district

---

[1] Petitioner has attached this order to his petition as Exhibit 1-8, and for ease of reference, the court will refer to that copy. The order is filed in the Middle District of Florida case, *Osorto Velasco I*, as ECF No. 16.

court entered judgment on behalf of petitioner. *Osorto Velasco I*, ECF No. 17. In ordering a bond hearing, the district court stated that it was only addressing petitioner's statutory claim, not his due process claim. ECF No. 1-8 at 4 n.4 ("Because the Court grants relief on Petitioner's claim under the INA, the Court need not address Petitioner's other claims.").

On May 14, 2026, an immigration judge conducted a custody redetermination hearing under 8 U.S.C. § 1226(a) as ordered by the district court. ECF No. 1-9. The immigration judge denied bond on the basis that petitioner presented a "danger to the community." *Id.* at 5.

On August 14, 2026, the immigration court granted DHS's motion to pretermit petitioner's application for asylum and other forms of humanitarian relief. ECF No. 5-4. The court denied all forms of relief and ordered that petitioner be removed. *Id.* at 8. Petitioner has appealed that decision to the Board of Immigration Appeals, and accordingly the removal order is not final. ECF No. 8-1.

Petitioner filed the instant petition on September 3, 2026. ECF No. 1. Respondents have answered, ECF No. 5, and petitioner has replied, ECF No. 6.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner argues that his re-detention and continued detention without a constitutionally sufficient bond hearing violates the Due Process Clause.[2] ECF No. 1 at 9. The government argues that the court should deny the petition because petitioner "is properly in removal proceedings, the immigration court already provided him with a bond hearing, and he has failed to exhaust administrative remedies."[3] ECF No. 5 at 1. Respondents assert in this habeas proceeding that "[p]etitioner is detained pursuant to 8 U.S.C. § 1226(a)." *Id.*

In analyzing petitioner's challenge to his ongoing detention, the court first identifies the statutory provision that confers authority for his detention. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008); *Solorzano-Ramirez v. Warden*, No. 1:26-cv-2540-DC-CSK, 2026 WL 1257256, at *2 (E.D. Cal. May 7, 2026). ICE re-detained petitioner under section 1225(b), not section 1226(a). *See* ECF No. 1-8 at 3. Indeed, there is no indication that ICE obtained an arrest warrant, which is required under section 1226(a). *See J.A.C.P. v. Wofford*, No. 1:25-cv-1354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)."). Further, there is no indication that petitioner was provided a determination of his custody status by an ICE officer, which is required for section 1226(a) arrests without a warrant. *See* 8 C.F.R. § 287.3(d) (requiring an initial custody determination and a post-hoc warrant within 48 hours).

Moreover, the government acknowledged in the Middle District of Florida that ICE detained petitioner under section 1225(b)(2) and argued that it could detain him without granting him a bond hearing. *Osorto Velasco I*, ECF No. 12 at 3 ("ICE is detaining Petitioner under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)."). Petitioner was not provided a bond hearing until the court in the Middle District of Florida ordered one in May 2026, over six months after petitioner was re-detained. *See* ECF No. 1-8; *Osorto Velasco I*, ECF No. 16.

I find that ICE re-detained petitioner under section 8 U.S.C. § 1225(b)(2). Now, after

[2] As I recommend that the court grant the petition on the due process claim in Count Three, I do not address petitioner's other claims. *See* ECF No. 1 at 8-11.

[3] Respondents' reply has the wrong petitioner's name in the caption, but the facts cited therein appear to relate to the current matter. *See* ECF No. 5 at 1.

having been ordered by the district court in the Middle District of Florida to provide petitioner a bond hearing, the government asserts to this court that petitioner was re-detained under section 1226(a) and that he has already received the process due under that statute. ECF No. 5 at 1. The government provides no authority to support this *post hoc* shift in detention authority. *See Betancourt Ulloa v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3360-DAD-CKD, 2026 WL 2389805 (E.D. Cal. Aug. 17, 2026) (collecting cases rejecting *post hoc* rationalizations for immigration detention authority); *see also Zuniga Cruz v. Noem*, No. 1:26-cv-01818-DC-EFB, 2026 WL 890471, at *2-3 (E.D. Cal. Apr. 1, 2026) (discussing different procedures for § 1225 and § 1226 detentions); *Martinez-Aguiana v. Mullin*, No. 3:26-cv-0561-RFB-CSD, 2026 WL 2212521, at *2 (D. Nev. July 31, 2026) (noting concession by immigration authorities that they do not follow section 1226 procedures for noncitizens arrested in the interior of the United States under section 1225(b)).

Having now determined petitioner' detention authority, the court addresses the government's exhaustion argument. Principally, respondents argue that because petitioner did not appeal the bond decision to the BIA, the petition should be dismissed for failure to exhaust administrative remedies. ECF No. 5 at 2. Section 2241 does not require exhaustion of administrative remedies prior to filing a habeas petition. *Compare* 28 U.S.C. § 2241 *with* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of state court remedies). Accordingly, "[t]he exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). To decide whether exhaustion is required, courts consider the *Puga* factors, evaluating whether: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. *Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). The exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000

(9th Cir. 2004).

The court finds that waiver of the exhaustion requirement is appropriate. Petitioner argues that he possessed a liberty interest under the due process clause and that the immigration court bond hearing he received was constitutionally insufficient to address the violation of that liberty interest that occurred when he was re-detained by ICE. ECF No. 1 at 20. "[A]n exception to the exhaustion requirement has been carved for constitutional challenges to the Immigration and Naturalization Act and [ICE] procedures because the BIA does not have jurisdiction to determine the constitutionality of the statutes it administers." *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (cleaned up); *see also Matter of Fede*, 20 I. & N. Dec. 35 (BIA 1989) (explaining why neither an immigration judge nor the BIA have the legal authority to consider constitutional challenges to the immigration regulations they administer).

Petitioner's immigration court bond hearing was conducted pursuant to a district court order that ordered a bond hearing under section 1226(a) and expressly did not address petitioner's due process rights. ECF No. 1-8 at 4 n.4. A section 1226(a) bond hearing places the burden of proof on an immigrant to demonstrate that he is neither a flight risk nor a danger. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

However, if petitioner succeeds on his due process argument, a constitutionally compliant bond hearing would require the government to prove by clear and convincing evidence that he is a danger to the community or a flight risk. *See Martinez v. Clark* 124 F.4th 775, 780 (9th Cir. 2024); *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 n.9 (collecting cases). To the extent that an appeal of the section 1226(a) hearing could have raised this issue, the BIA would not have been empowered to address it, and the appeal would have been futile. *See Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 895 (9th Cir. 2021) (quoting *Carr v. Saul*, 141 S. Ct. 1352, 1361 (2021) ("Futility is a traditional exception to judicially created exhaustion requirements because '[i]t makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested.'").

Thus, as the administrative remedies are not adequate to address petitioner's due process challenge to his re-detention, exhaustion should be waived. *See Zhou v. Warden, Cal. City*

*Immigr. Processing Ctr.*, No. 1:26-cv-6527-DAD-CSK, 2026 WL 2445606, at *1 (E.D. Cal. Aug. 20, 2026) (waiving exhaustion for a petitioner who had not requested a hearing under *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999) before challenging his re-detention on constitutional grounds); *Gutierrez Romo v. Chestnut*, No. 1:26-cv-3449-KES-FJS (HC), 2026 WL 2254385, at *4 n.4 (E.D. Cal. Aug. 4, 2026) (same); *see also Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *2 (E.D. Cal. June 25, 2026) (concluding that prudential exhaustion factors weighed against imposing exhaustion where the petitioner brought a procedural due process claim).

Turning to petitioner's due process claim, first, a court must consider whether there exists a protected liberty interest under the Due Process Clause, and, second, a court must evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

Petitioner came to the United States as an eight-year-old child and was taken into custody and then released into the country by immigration authorities. ECF No. 1-3 at 2; ECF No. 5-6 at 2. In September 2025, DHS granted petitioner special immigrant juvenile ("SIJ") status. ECF No. 1-5 at 2. SIJ status allows young immigrants to be deemed "paroled" into the United States for adjustment of status purposes. *See* 8 CFR § 204.11(b)(1); *see also Joshua M. v. Barr*, 439 F. Supp. 3d 632, 655-59 (E.D. Va. 2020) (explaining SIJ process and benefits conferred by SIJ status). SIJ status "reflects the determination of 'Congress to accord those abused, neglected, and abandoned children a legal relationship with the United States and to ensure they are not stripped of the opportunity to retain and deepen that relationship without due process.'" *Joshua M.*, 439 F. Supp. 3d at 678 (quoting *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 170 (3rd Cir. 2018)). The release of an unaccompanied minor into the U.S. confers a protected liberty interest under the due process clause. *See Silvestre v. Becerra*, No. 1:26-cv-5919-DC-CKD, 2026 WL 2364045, at *3 (E.D. Cal. Aug. 14, 2026), *report and recommendation adopted,* 2026 WL 2494967 (E.D. Cal. Aug. 25, 2026). The granting of SIJ status does as well. *See Saini v. Warden*, No. 1:26-cv-6529-KES-EGC, 2026 WL 2481771, at *1 (E.D. Cal. Aug. 24, 2026);

*Rodriguez v. Perry*, 747 F. Supp. 3d 911, 916 (E.D. Va. 2024). I agree with the reasoning of these opinions and find that petitioner's release from custody into the United States and receipt of SIJ status conferred upon him a constitutionally protected liberty interest under the due process clause.

Accordingly, I must next determine what procedural protections the government should have afforded petitioner before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in continued release during the decade since he was released from custody into the United States. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Second, the risk of erroneous deprivation without a bond hearing is high. Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-1471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is

justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

Respondents offer no evidence or argument indicating that constitutionally compliant procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government maintained for approximately six months that petitioner was subject to mandatory detention and denied him a bond hearing until forced to do so by a district court indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a [constitutionally compliant] bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a [constitutionally compliant] hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). Indeed, respondents have provided no information about the additional burden that would fall on them as a result of being required to provide a bond hearing that complies with the constitution. *See* ECF No. 5. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention and continued custody without a constitutionally compliant bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release or a constitutionally compliant bond hearing. ECF No. 1 at 22. Respondents do not address the issue. ECF No. 5.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S.

103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up).

Here, respondents do not explain in what way there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. Petitioner was arrested for and charged with sending an illegal image through his cell phone when he was 17 years old. ECF No. 5-1. Law enforcement reviewed his phone and computer and found no evidence of any other illegal images. ECF No. 5-1 at 5. Although petitioner was charged in state court, he was released upon posting a $5,000 bond, indicating that he was not considered a serious danger or flight risk by the criminal court. ECF No. 1-6 at 2.

Petitioner was eighteen years old when he was taken into immigration custody. He has a supportive family and has been raised in the United States for the last decade. Respondents do not argue that petitioner is a danger or a flight risk. *See* ECF No. 5. Under these circumstances, I find that the "typical remedy" of release, *see Munaf*, 553 U.S. at 693, is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Further, respondents' nearly year-long re-detention of petitioner under the wrong statutory authority could not be remedied by a constitutionally compliant bond hearing at this point. *See Cortes Cortes v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-6609-DC-JDP,

2026 WL 2494984, at * 3 (E.D. Cal. Aug. 25, 2026); *Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025). In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right." No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted). This supports immediate release.

Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See id*.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents be ordered to immediately release petitioner (A-Number: 209-295-118) from their custody on the same conditions as his prior release. Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: October 6, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE